UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10-cv-00138-JAW |
| ) | |
| ANDREW MAYS & ) | |
| SAMUEL CHISHOLM, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The United States brought a civil action under the False Claims Act against two Southwest Harbor residents alleging they invoiced and accepted federal grant payments for services not actually rendered in the installation of a town camera surveillance system. The Defendants moved for summary judgment. Because genuine issues of material fact remain, the Court denies the motion.

**I. STATEMENT OF FACTS**

   **A. Procedural Background**

On April 15, 2010, the United States (Government) filed a complaint in this Court against Samuel Chisholm and Andrew Mays. *Compl.* (Docket #1).[1] On April 3, 2011, the Defendants moved for summary judgment, *Defs.' Mot. for Summ. J.*

---

[1] On July 15, 2010, the Government moved for an entry of default and default judgment against the Defendants. *Pl.'s Mot. for Entry of Default as to Andrew Mays* (Docket # 6); *Pl.'s Mot. for Default J. as to Andrew Mays* (Docket # 7); *Pl.'s Mot. for Entry of Default as to Samuel Chisholm* (Docket # 8); *Pl.'s Mot. for Default J. as to Samuel Chisholm* (Docket # 9). The Court granted the motions the next day and entered default judgment. *Default J.* (Docket # 10-12). The Defendants filed a Motion to Set Aside Default Judgment and a Motion for Order for Relief from Judgment (Docket #19). The Court granted both motions without objection on September 15, 2010. (Docket # 21).

(*Defs.' Mot.*) (Docket # 37), and two days later filed Defendants' Statement of Material Facts in Support of Motion for Summary Judgment. *Defs.' Statement of Fact* (DSMF) (Docket # 38). The Government filed its Response to Motion for Summary Judgment on May 2, 2011, along with its Opposing Statement of Material Facts Including Separate Statement of Additional Facts. *Pl.'s Resp. in Opp'n re Mot. for Summ. J.* (*Pl.'s Opp'n*) (Docket #42); *Pl.'s Statement of Fact* (PRDSMF); *Pl.'s Statement of Additional Facts* (PSAMF) (Docket # 43).

### B. Factual Background

In March of 2005, the town of Southwest Harbor, in collaboration with the Hancock County Emergency Management Agency (Hancock County EMA), requested authorization from the state of Maine Homeland Security Funding Coordinator to spend $52,000 to purchase and install a camera surveillance system in the port town. PRDSMF ¶ 1; DSMF ¶ 1. Mr. Chisholm, the chief of the Southwest Harbor Fire Department, prepared the detailed portion of the grant application, which included a budgetary cost description equaling the $52,000 maximum grant amount. PRDSMF ¶ 2; DSMF ¶ 2; *Compl.* Ex. 2. He later submitted an addendum, which addressed the absence of installation costs in the first memorandum. PRDSMF ¶ 5; PSAMF ¶ 21; *Compl.* Ex. 3. The addendum reads:

> Estimates for installation have varied depending on the source, with a low estimate of $8000.00 and a high (site unseen) estimate of $60,000.
>
> This department will not be requesting funding for installation costs. I am pleased to report that local residents and businesses have agreed to

donate the labor required to install the cameras for the town of Southwest Harbor.

*Compl.* Ex. 3.

The Maine Emergency Management Agency (MEMA) approved the Homeland Security Grant Program application in April 2006. DSMF ¶ 7; PRDSMF ¶ 7; *Compl.* Ex. 4. MEMA authorized the town to spend $43,436.41 from the "FY-04 Homeland Security Hancock County Pool" with the "remaining $8,563.59 coming from Southwest Harbor's Law Enforcement Terrorism Protection Program funds. PSAMF ¶¶ 8, 25; *Compl.* Ex. 4. Federal grant money was the ultimate source of funding. PSAMF ¶¶ 11, 40; *Carbone Decl.* ¶ 5. The grant approval letter directed that invoices be sent to MEMA because the grant was to be administered on a "reimbursement basis" with payments based on "actual costs." PRDSMF ¶ 7, Ex. 2, 4; PSAMF ¶¶ 14, 26.

Mr. Chisholm submitted two invoices for reimbursement after receiving this approval—one for $38,820.56 from North American Video, Inc. for camera equipment and the other for $13,179.44 from Mermaid Marine, an unincorporated business owned and operated by Mr. Mays and his wife. PRDSMF ¶ 12; DSMF ¶ 12; *Compl.* Ex. 6; PSAMF ¶¶ 28-30. Dated May 25, 2006, the Mermaid Marine invoice provided a "Description of Work:"

> Install (4) remotely operated, wireless surveillance cameras at various locations with the capability of viewing the harbor, public parking and access areas, and other town facilities.
>
> This includes:
> 1) Electrical and Mechanical site work at remote camera locations
> 2) Testing, Hookup and installation at camera locations

3

3) Wireless links from cameras to sewage treatment plant
4) Fiber optic connection from treatment plant to police station
5) Installation of monitors at police station
6) Digital recording of camera footage
7) Internet accessibility for remote viewing

*Compl.* Ex. 6. Upon receipt of the invoices, the Hancock County EMA disbursed the $52,000. PRDSMF ¶ 13; DSMF ¶ 13; PSAMF ¶ 36. Mermaid Marine was paid $13,179.44. PSAMF ¶ 36; *Compl.* Ex. 7. This much the parties agree.

From here, the two parties diverge. The Government maintains that the document Mermaid Marine submitted to Mr. Chisholm and that Mr. Chisholm forwarded to the Hancock County EMA was an invoice. PRDSMF ¶ 12. The Defendants, although they also refer to the "Mermaid Marine invoice," DSMF ¶ 12, portray the Mermaid Marine document that Mr. Mays prepared as "a quoted scope of work" merely evidencing Mermaid Marine's commitment "to complete all aspects of the camera project." *Defs.' Mot.* at 3.

The Government maintains that "[c]ontrary to the Mermaid Marine invoice, the cameras were actually installed by volunteers." *Pl.'s Resp.* at 4; PSAMF ¶¶ 41-43. The Government quotes Mr. Chisholm as saying in a sworn statement:

> "I and other volunteers began building the system, and connecting it together to ensure that it would work. This work was done during the winter of 2006 . . . . Mr. Parker, I and a gaggle of volunteers put the remaining pieces of the system together and by [] late July 2007 we commissioned the system."

PRDSMF Ex. 33 ¶¶ 11, 14.

According to the Defendants, Mr. Mays did act as installer of the system, as well as project manager and system designer, and he remains committed to

4

installing the fourth camera when the town is ready. DSMF ¶¶ 15-16. While Mr. Mays "did not keep time sheets, etc. since this was a fixed cost project," in response to one of Plaintiff's interrogatories—"state when you installed the three of four cameras"—he maintains that "Manset town dock camera, upper Southwest Harbor town dock camera and third camera located on Coast Guard tower overlooking lower town dock [were] commenced August 2006 and completed by August 2007." PRDSMF Ex. 24 ¶ 2A. He also says that he will "continue to provide training, maintenance and repair of the camera systems at no further expense to the Town on an as-needed basis." PRDSMF Ex. 24 ¶ 2A.

The Government further points to "several irregularities about the project that suggest impropriety and false pretenses." *Pl.'s Resp.* at 4. Among the irregularities is "a notable absence of contemporaneous documentation regarding the project" and the fact that the work that Mr. Mays actually did on the project differed from the installation services he billed on the invoice. *Pl.'s Resp.* at 5. Mr. Mays and Mermaid Marine did not install any of the three mounted cameras "or otherwise provide labor for the project." *Pl.'s Resp.* at 4; PSAMF ¶¶ 15, 42-43. Instead, the Government claims, Mr. Chisholm only retained Mermaid Marine "so it could purchase miscellaneous items and handle the money" and serve as a go-between. *Pl.'s Resp.* at 5; PSAMF ¶ 54. The Government notes that the Mermaid Marine invoice was for "the exact amount remaining as the balance of the grant funds" even though Mr. Chisholm's previous $8,000 estimate was lower than $13,179.44. *Pl.'s Resp.* at 6; PSAMF ¶¶ 68, 74-78.

5

In response, Mr. Chisholm explains that he only had Mr. Mays prepare and submit an invoice in May, ahead of the actual work being done, because he was told by the Hancock County EMA that "the door was closing on 2004" funds. DSMF ¶ 8. The Defendants say that "[b]y submitting an invoice for the fixed sum of $13,179.44, Mr. Mays was ensuring that the total project cost would stay within the approved grant funding limits while accepting an open-ended commitment to plan, manage, complete installation and ensure proper operation of the Southwest Harbor security camera system." DSMF ¶ 20. Besides, the Defendants argue, the estimated and actual costs so far for materials and subcontractor labor for the four cameras is $8,833.11. DSMF ¶ 25. That would leave Mr. Mays a maximum compensation of just $4,346.33 for all of Mermaid Marine's services. DSMF ¶ 25.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also* D. ME. LOC. R. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the nonmoving party." *Rodriguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (citation and internal quotation marks omitted); *see also Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) ("the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side") (internal

6

citation omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (citation and internal quotation marks omitted). To avoid summary judgment, the nonmoving party must "produce sufficient facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); *see also* FED. R. CIV. P. 56(c).

## III. DISCUSSION

### A. The Claims Relating to the False Claims Act

In Counts 1 and 2 of the Complaint, the Government alleges that Mr. Mays and Mr. Chisholm engaged in fraudulent billing, a violation of the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1)-(2).[2] The Government claims that by submitting the Mermaid Marine invoice, the two men made a false claim and procured federal grant money by false pretenses. *Pl.'s Resp.* at 9. In response, the Defendants maintain that there is no evidence of fraudulent conduct, and "[a]n overactive imagination cannot suffice in creating a conspiracy between the Defendants and/or any individual fraudulent conduct." *Defs.' Mot.* at 2.

The FCA "covers all fraudulent attempts to cause the government to pay out sums of money," *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 305-06 (1st Cir. 2010), and prohibits the knowing submission of false or fraudulent claims to the federal government. *See Maturi v. McLaughlin Research Corp.*, 413

---

[2] The Complaint cites 31 U.S.C. § 3729(a)(1) for Count 1, "Knowingly Presenting Or Causing To Be Presented A False Or Fraudulent Claim," and 31 U.S.C. § 3729(a)(2) for Count 2, "Knowingly Using False Records Or Statements To Get A False Claim Paid." Following a 2009 amendment, those sections are properly cited as § 3729(a)(1)(A) and § 3729(a)(1)(B). *See Fraud Enforcement and Recovery Act*, Pub. L. No. 111-21, § 4(a), 123 Stat. 1625 (2009).

7

F.3d 166, 171-72 (1st Cir. 2005). The FCA imposes liability on "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). "The paradigmatic example of a false claim under the FCA is a false invoice or bill for goods or services." *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995).

Proof of a specific intent to defraud is not required, but to be found liable under the FCA, a defendant must act "knowingly" in submitting a false claim. 31 U.S.C. § 3729(a)(1)(A)-(B); *Unum Group*, 613 F.3d at 312. The statute defines "knowingly" as having "actual knowledge" of the information or as acting in "deliberate indifference" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). To prove this, the plaintiff must show that the defendant "intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 665 (2008).

The First Circuit has "long held that the FCA is subject to a judicially-imposed requirement that the allegedly false claim or statement be material." *Unum Group,* 613 F.3d at 307. "[I]n general, a false statement is material if it has 'a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)). "[A]ll that the test requires is that the false or

fraudulent statement is *capable* of influencing" the government's decision to pay out funds. *Id.* at 309 (emphasis in original).

To succeed on their motion, the Defendants must show that there is no genuine dispute of material fact on these issues. The Court concludes that the Defendants have not satisfied their burden. The Government bases its FCA claims on two separate documents: (1) Mr. Chisholm's addendum to the town's grant application memorandum; and (2) the invoice for services that Mermaid Marine submitted to Mr. Chisholm and that Mr. Chisholm submitted to the Government. One document says that Mermaid Marine installed the town cameras and deserved reimbursement for the work; the other says that volunteers did the work for free.

The Defendants argue that there is no "credible link between these two documents," *Defs.' Mot.* at 2, and maintain that neither document was "created, used or otherwise intended to commit any fraud on the United States government." *Defs.' Mot.* at 3. According to the Defendants, what the Government mistakes for fraudulent conduct was merely Mr. Chisholm, with little or no experience in electronics, "doing his best in his capacity as a volunteer fire chief to cobble together the grant application." *Defs.' Mot.* at 2.

The Defendants further dispute any connection between the addendum and the Mermaid Marine invoice by explaining that Mr. Mays, as a member of the "small, supportive coastal community" dedicated to making the project work, "stepped forward and committed to project completion within the limits of the approved grant." *Defs.' Mot.* at 2. The Defendants go on to assert that Mr. Mays

9

did not knowingly commit fraud as required by the statute, but that he "committed to complete all aspects of the camera project" and that "this was his intent when he drafted [the invoice] in May 2006 and remains his intent today." *Defs.' Mot.* at 3.

According to the Defendants, Mr. Mays's commitment is best characterized as agreeing to "unlimited follow-on maintenance and training for a sum not to exceed $13,179.44"—the amount remaining from the grant. *Defs.' Mot.* at 3; DSMF ¶ 12. "Mr. Mays took over all project management far in excess of the quoted scope of work." *Defs.' Mot.* at 3. He determined that at least $7,799.45 of that amount was already paid out for materials and to subcontractors and estimates that it will cost an additional $1,033.66 to obtain materials and subcontractors to install the fourth camera. *Defs.' Mot.* at 3; DSMF ¶ 23-24. By the Defendants' calculations, this leaves only $4,346.33 as the maximum compensation Mermaid Marine and Mr. Mays will receive for what will be essentially unlimited future camera services to the town. DSMF ¶ 25.

The Government offers a markedly different view. It maintains that by submitting the Mermaid Marine invoice, Mr. Mays was affirming that he had in fact completed the work detailed on the bill because the invoice said nothing about open-ended project management. PRDSMF ¶12. The Government asserts that Mr. Mays prepared the false invoice that Mr. Chisholm submitted for reimbursement because the federal grant repaid money to the town only upon receipt of an invoice. *Pl.'s Resp.* at 10. In the Government's view, the Mermaid Marine document is a false claim because Mr. Mays had not actually done any of the work listed on the

invoice, and Mr. Chisholm "chose to ignore the fact that Mays was paid for something that he didn't do." *Pl.'s Resp.* at 10-11. In effect, the Government alleges that Mr. Mays sought government payment for work others performed for virtually nothing—the camera installation he charged for was actually performed by volunteers at little to no cost—and that Mr. Chisholm assisted in this false procurement of funds. The Government claims that, rather than submitting invoices for actual expenses, Mr. Chisholm attempted to ensure that Southwest Harbor received all $52,000 of the grant money for which it was eligible by submitting Mr. Mays's false Mermaid Marine invoice for the exact amount of the remainder of the grant.

At heart, the parties disagree about whether the Defendants' submitted claims were false. In the Defendants' view, the claim for payment to Mermaid Marine was truthful and valid; in the Plaintiff's, it was not. Given that the issue of falsity will determine the outcome of the litigation, whether Mr. Chisholm and Mr. Mays presented a false claim to the Government is a material fact. The dispute over this fact is genuine because the evidence presented is such that a reasonable jury could resolve the point in the Plaintiff's favor. Through depositions, interrogatories, and copies of the Mays invoice and the Chisholm addendum, the Plaintiff presented evidence such that a reasonable jury might find the work listed on Mermaid Marine's invoice was not performed by Mr. Mays, that Mr. Chisholm was concerned that the town would not receive the full $52,000 it was granted without documenting invoices, and that the Mermaid Marine invoice was submitted

11

to get the Government to "reimburse" the town for the full $52,000 grant amount, whether the work had been performed by Mermaid Marine or not. The relevant evidence, viewed in the light most flattering to the Government, creates a genuine issue of material fact; this is not a case in which there has been "a complete failure of proof concerning an essential element" of the Government's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court concludes that whether Defendants fraudulently submitted invoices to the Government for payment is a genuine issue of material fact. Summary judgment is not proper on the FCA claims.

### B. The Common Law Claims

The Defendants argue that they are entitled to summary judgment on the remaining claims because they are also premised on the allegation of false or fraudulent claims. The Court has determined that summary judgment is not warranted on the FCA claims. Even were that not so, the FCA claims are distinct from the common law claims. The FCA "attaches liability . . . to the claim for payment . . . even if it did not actually induce the government to pay out funds or suffer any loss." *Rivera*, 55 F.3d at 709. Here, prompted by the allegedly false invoice, the Government actually paid out the funds to Mr. Mays. It was the payout—rather than the claim itself—that leads to Count 3 (Payment by Mistake of Fact), Count 4 (Unjust Enrichment), and Count 5 (Disgorgement of Illegal Profits and an Accounting).

The three common law claims are restitutionary in nature because they "deal with 'situations in which one person is accountable to another on the ground that

otherwise he would unjustly benefit or the other would unjustly suffer loss.'" A. Horton & P. McGehee, MAINE CIVIL REMEDIES § 7-1 at 173 (4th Ed. 2004) (quoting RESTATEMENT OF RESTITUTION, General Scope Note at 1 (1937) (Horton & McGehee) and citing *Bartner v. Carter*, 405 A.2d 194, 202 (Me. 1979)). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* at 174 (quoting RESTATEMENT OF RESTITUTION § 1 AT 12).

In Maine, a party claiming unjust enrichment must show that: "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743, 750. The Plaintiff has presented sufficient evidence that a reasonable jury could find that the three elements of unjust enrichment are met and that Mr. Mays would be unjustly enriched by retaining the Mermaid Marine payment.

The Plaintiff has also presented sufficient evidence to survive summary judgment on the claim of payment by mistake of fact. "Money paid on the basis of a mistake of fact is generally recoverable, based on the principle that the recipient of money that would not have been paid over but for a mistake of fact would be unjustly enriched if allowed to retain the money." Horton & McGehee, *supra*, § 7-9(a) at 190 (citing cases). To recover, "there must have been reliance on the mistaken perception." *Id.* § 7-9(a)(1) at 191. Here, the Plaintiff has shown reliance on a mistaken perception—it would not have paid over the federal grant money

13

without presentation of the Mermaid Marine invoice—so Count 3 survives summary judgment.

Finally, the Plaintiff has requested a full accounting and a disgorgement of all profits from the fraudulent claims. "[A]n accounting may be had virtually whenever necessary to try all issues and award complete relief to the parties." *Id.* § 8-2 at 199-200. The Court may award an accounting when the defendant has misappropriated money belonging to the plaintiff and the misappropriated money needs to be traced. *Id.* at 201. Likewise, "[t]he need to consider different accounting methods, problems in proving specific items, as well as numerosity, may justify a formal accounting." *Id.* The Court concludes that in this case an accounting is necessary and appropriate; summary judgment is not proper.

The Court concludes that the Plaintiff has produced sufficient facts to present a trialworthy issue on the remaining common law counts, as well as the FCA claims.

## IV. CONCLUSION

The Court DENIES the Defendants' Motion for Summary Judgment (Docket # 37).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2011